Good morning, Your Honors, and may it please the Court. My name is Luka Kolomejek, and I, along with Madison Hill and Professor Evangeline Averill, represent the petitioner, Yordan. Today, I will argue that the Board erred when it determined that there was no nexus for asylum and withholding of removal. My partner, Madison Hill, will be arguing that the Board erred in applying the animus sorry, that animus was incorrectly applied, and that Yordan's race claim was exhausted. I would like to reserve three minutes for rebuttal. In this case, the Board's sole reason for denying asylum and withholding of removal was that there was no nexus to any protected ground. In making this determination, the Board made three errors. First, the Board misstated the holding in Rodriguez-Zuniga, which led to them applying the wrong rule in this case. Second, the Board erred by not conducting a mixed mode of analysis. And third, the Board erred by not meaningfully considering the difference between the one central reason standard for asylum and the A reason standard for withholding of removal. The Board stated that Rodriguez-Zuniga holds that where a persecutor's actual motivation is threatening a person to extort money, there is no nexus to a protected ground. However, this court in Rodriguez-Zuniga specifically stated that our case law permits someone to establish nexus when one of the persecutor's motivations is financial, so long as another motivation is actually motivating the persecutor and is based on the victim's protected characteristic. I'm sorry, I'm a little confused because the only cite I see in the BIA's opinion to Rodriguez-Zuniga says that without clear error, the immigration judge found that there was no demonstration of animus. Your Honor, on AR4, in the middle of the paragraph, they cite to it and I believe in parentheses they include the holding of the case. And then they go on to explain that family membership would only be incidental after. Is that? I see. Okay. Keep going. I guess I see what you're saying. I mean, the cite is used, though, to support the idea that here there was no animus. But you're using the parenthetical to be what you think they were relying on, not the sentence? Correct, Your Honor. I believe after they apply the parenthetical, then they go on to say that family membership would not be able to be one central reason or a reason for the asylum and withholding claims because of that conclusion. However, in our case, we believe that our case is distinguishable from Rodriguez-Zuniga. In that case, the petitioner was the mother. However, in our case, the petitioner is the child. And that's important because in Rodriguez-Zuniga, the court stated that the reasons needed to prove nexus refer to the persecutor's motivations for persecuting the petitioner, and that's not somebody else. Therefore, the inquiry is why the petitioner is targeting Jordan in this case and not why they targeted his mother. And the evidence shows that but for his relationship to his mother, he would not have faced these death threats. So in Rodriguez-Zuniga, there was a son who was twice threatened to get money from the mother, and there's a paragraph in the opinion that discusses that and says it's still not a nexus. How do you deal with that paragraph? Your Honor, to my understanding, I think in Rodriguez-Zuniga, it was just a one-time incident. It was a one incident, but there were two threats in the same incident, I believe, both targeted at the son. Yes. So the board found that the mother was not targeted because of a family relationship, and the son in that case was just a derivative of her claim. So in our case, we're arguing that. But so there's a paragraph that starts even assuming or words like that. Let me find it. Assuming for the sake of argument, that paragraph. Do you remember the paragraph I'm talking about?  So how do you deal with that paragraph? Could you say it again? Because I'm not sure it matters that he was a derivative because they're looking there at the son as I understand it. Well, the way that we're distinguishing our case is that we believe that that was a one-off crime. It was an attempted robbery outside of a bank in public. But in our case, we have three different incidents spanning over six months where the same group of perpetrators are coming at Yordan and threatening to kidnap and kill him. So our case is not based on random violence. Isn't it the case, doesn't Rodriguez-Zuniga itself suggest that under the circumstances of this single, you know, theft incident outside a bank that it's sort of implicit that because the son was with her, the son was threatened, but I think they say if it had been a dog with her, if it had been a good friend with her, it was sort of under these circumstances. The person engaging in the robbery was going to use whatever leverage was available at that particular moment in that particular circumstance, and in fact, it may be that it wasn't even clear. It was implied that that was her son. Certainly, you know, before they engaged with one another, presumably the assailant didn't have knowledge of the family relationship between these two. So isn't that what Rodriguez-Zuniga itself sort of compares the circumstances to? Which I think you would argue are different here. Is that right? That's correct, Your Honor. Specifically, the perpetrators in this case knew that they knew Yordan's mother's name and that she was returning from the United States, and they also went to Yordan's grandfather's house in a village in Guatemala. Six months after this first incident, the same group of perpetrators showed up to Yordan's father's house, which is two hours away by car in another village, and they once again threatened to kidnap and kill Yordan. Finally, after Yordan and his mother fled to the United States, the perpetrators returned to the incident of the first location, looking for Yordan and his mother once again. That shows that it's not one incident and maybe isn't random, but I'm still struggling with the idea. So in Rodriguez-Zuniga, the robber said, I'm going to get your son. More than once threatens the son using the word son. As I understand, it's in a quote. So I don't really understand why for the question of whether the relationship doesn't really matter because the point is money, why it matters that it was more than once instead of once for the concept of why you're targeting the son to get money from the mother. Your Honor, in Corpeno-Romero, this court cautioned over reading Rodriguez-Zuniga. And in that case, it was in addition to the father being killed for not paying extortion bribes. He was then, they started targeting the son because they wanted the son to join the gang. So in that aspect, it was them targeting the son as a means in order to make an ends. And we believe that Rodriguez-Zuniga, by the person, sorry, in our case, we believe that by the perpetrator specifically targeting Yordan on multiple occasions, it shows that they had an animus against Yordan and his mother and that they wanted to continue and try to kidnap and kill him. And but for that relationship with his mother, he would not have received these threats. And we think that his relationship with his mother is a central reason and a reason he was persecuted. Additionally, even if this court doesn't find that it's one central reason, we believe that the board erred by determining that it was not a reason. The a reason is a weaker nexus standard, and it's easier to meet than an asylum claims. By concluding in two sentences why Yordan's family-based social group was not a reason for the persecution, the board failed to actually analyze whether his family role played a reason. Yordan's relationship to his mother was at the very least a reason he was threatened with being kidnapped and killed. As a person may have a reason for doing something, that is not one central reason. So you said along the way there that you think there was animus against the family. Is that needed for your argument here, or are you just trying to say it had something to do with the family, whether there's animus or not? That's correct, Your Honor. We don't believe animus is required, but we do think animus is a way to establish a nexus. And you think there is animus here, even though the agency said there wasn't? Yes, Your Honor. And what is your best support for that? Our best support is the repeated attempts to come after the family. Even if in the first instance they may not have had animus, Borjas-Romero shows that during the first attack, when the mother doesn't pay the extortion, then that can create an animus against the family. And they kept coming after the same family in order to try and kidnap and kill Jordan as a result of not paying the extortion. I know you want to save time for rebuttal, and you have a colleague who's going to argue, so why don't we let her go next. Thank you. Good morning, Your Honors, and may it please the Court. My name is Madison Hill, and as previewed by my co-counsel, Luka Kolomejek, I will be addressing three main points. One, the Board erred in requiring animus in this case. Two, Jordan's race-based claim was exhausted before the Board. And three, even if Jordan's race-based claim was not properly exhausted, this Court may revive the forfeited claim. First, on the issue of animus. This Court does not require a petitioner to demonstrate animus, and the Board erred in imposing an animus requirement in this case. The word animus does not appear in the relevant sections of the INA pertaining to Jordan's claims, but is rather a creation of the Board itself. In Rodriguez-Zuniga, this Court acknowledged that animus is, quote, an example of the type of nexus that is required for an asylum and withholding claim. Again, in Garcia v. Wilkinson, this Court referred to animus as merely being sufficient on the issue of nexus, rather than a separate requirement. To require animus here today would run counter to this Court's precedent. So is there something beyond? It seems to be the central reason analysis does ask for something beyond but for causation, correct? Correct. And so I think the BIA has articulated that as animus or a desire to overcome the protected trait. Under the Ninth Circuit law, what is that something more than but for causation? What are we actually evaluating the existence of? So there can be either animus or an intent to overcome. That could be that something more. However, to say that animus and intent to overcome are synonymous in this case is incorrect. There are cases where we see an intent to overcome without animus. These are cases like female genital mutilation, such as the Board's own Madara Kasinga. In those cases, that's often a trusted community member or family member that believes they're doing a benevolent service on behalf of the young child. And that's an intent to overcome a defining female characteristic without a hatred or animosity towards the child itself. And do you think that concept is relevant in this case at all? Is there anything about intent to overcome that you could argue might have happened here? No, Your Honor. The government is positing that intent to overcome is synonymous with animus in this case. However, we would hold that family-based particular social groups imposing an intent to overcome requirement is unworkable. An intent to overcome requirement would on some level require the perception of the persecutor that the particular social group is surmountable or a choice. And this has bad implications for the concept of immutability. Because of the or, I'm just confused. Because of the or, though, it's animus or intent to overcome, right? So I'm confused about why we need to worry about intent to overcome in this case at all. We would agree, Your Honor. That would be our position, that intent to overcome is not relevant in this case and that animus is not a requirement in this case. Then the question is, what is? If we don't have intent to overcome and animus is not required, but something other than simple but for causation, which seems pretty clearly to exist here, is required, what is that under the Ninth Circuit's case law? So while we are arguing here that animus is not required, that is not to say that we don't have sufficient evidence of animus in this case. As my co-counsel explained, Jordan was hunted routinely over a six-month period. He was followed from one village to another village two hours away. In each incident, he was the only one threatened to be murdered, chopped up, and eaten. Before you move away from the legal argument, though, I see you're shifting to trying to show that there was sufficient or even compelling evidence of animus. But I think the question really is, what are ways to show a central reason other than animus or intent to overcome? It seems to me you're arguing there should be at least some other way to prove something beyond an incident. Prove that family, PSG, or any type of protected basis is a central reason for the targeting. If we were to agree with you that animus isn't required and that something other than animus or intent to overcome, what would that other thing possibly be? Is there a description or an example for it? In the Sixth Circuit, they give a hypothetical example in which there's a positive view of a particular social group. I think white women, they say, and the positive view, so not animus and not intent to overcome, is something that they want to exploit, essentially. And you see that's an example. So is there support for that in our case? Or is it just an open question about whether there's another way to show targeting that amounts to a central reason? It appears to be an open question. In this case, both animus or an intent to overcome could be sufficient and could be that something else that we are looking for here. However, neither one is required on their own. And either one could be sufficient on the example of something extra added that is needed to establish nexus. The board in its former LEA decision once hinted that there was other circumstances that may amount to this. They left that question open. And the Tenth Circuit, in overturning the matter of MRMS, alluded to that the board has never correctly asserted what animus means. They've never defined it. So it's a loose term that doesn't have a whole lot of concrete definition behind it. If we were to agree with you that it doesn't need to be animus or intent to overcome, is there some third thing that you think is relevant here that the board didn't consider but should have? No, Your Honor. I think that there's no additional thing that could be needed in this case. However, we do have sufficient evidence of animus in the record where this Court to hold that animus is required in this case. So I guess I'm wondering if this is a case that gives us any opportunity to consider that question about whether there might be some third thing. It doesn't seem like you're arguing that in this case any third type of way to qualify as a nexus is relevant here. It's certainly an unanswered question in this case, Your Honor, so this Court would be able to assess that question. But is there something we could say that would help your client on that regard? I mean, the blonde women example in the Sixth Circuit I don't think helps your client here. I don't think there's an argument that there was some positive reason for targeting your client. No, Your Honor. Is there any other third way that we could help your client by articulating a third way? Not that I'm thinking of right now, Your Honor. On that note, I would like to turn to the next issue of the exhaustion of the race-based claim. The standard for exhaustion is that the issue is raised in the administrative proceedings below sufficient to put the BIA on notice of what is being challenged. However, this does not import a requirement that the challenger themselves be the one to raise the issue. Although the issue was not raised by Yordan's brief to the Board, the DHS did brief the issue extensively in their motion for summary affirmance, putting the Board on notice. The Board was so sufficiently put on notice of this claim that they acknowledged it and deemed it waived in a footnote. In this case, the administrative agencies had the opportunity to rule on the issue at both the IJ and BIA level, and no prejudice would be imputed to the government for this Court to remand the issue of race. The DHS was given the opportunity to brief the issue at every level, and the DHS had an interest in a favorable ruling from the BIA and of the BIA ruling on the issue on the merits. Additionally, I'd like to point out the sequence of the briefs in the BIA case. Yordan's brief, which did not include the race-based issue, was filed on October 25th, and the DHS's motion was on December 6th. So they were on notice that Yordan himself had not raised the issue yet, but the DHS still raised the issue to the Board. Your Honors, I see that I'm out of time, so I'd like to reserve the rest. Thank you. We'll still give you three minutes for a rebuttal, but let's hear from the government. Thank you, Your Honor. Good morning, Your Honors. Can you hear me okay? Great. May it please the Court. I'd like to start by zooming out. The Court has asked what other thing is required beyond but for cause, beyond animus or an intent to overcome. The simple answer is that motivation is required. The perpetrator must care about the protected characteristic in a way that motivates them to act. And that is where, critically, we are lacking evidence of the family relationship being that kind of motive. The petitioners have used the challenge or argument that this assault was not random, but that does not establish that it was motivated by a protected ground. If a perpetrator or robber is planning an attack on a wealthy family, that attack is planned. It's not random, but it still may be purely opportunistic. And again, that is what has occurred in this case as well. I'd also like to zoom out. So what is, again, what is the motive that is required if it is not limited to animus or an intent to overcome? I mean, it seems clear here that the motivation, you know, they were motivated by the petitioner's family status. That was the very reason they were acting. So what do we need sort of to perceive in the heads of the actor with respect to their feeling about that family status if it's not limited to animus or intent to overcome? What other, what are we testing for? I think the board has clearly said that it is animus, an intent to overcome or otherwise prove animus. And in its decision in OCD. Oh, sorry. And is that but what is that the Ninth Circuit law or what is the Ninth Circuit's law in this question? The Ninth Circuit, I think it clearly, most clearly does say in Rodrigo Zuniga itself that what is critical and what is required is actual motivation. Something that causes the perpetrator to act, motivates intrinsically the perfect perpetrator to act. And of course, these motive questions are always a little bit fuzzy and complicated. And I think what might be helpful is to talk, even though it was a mixed motive case, but to talk about the bucket analogy in Alfaro Manzano, because I think it helpfully contextualizes sort of the difference between a question about causation only and a question about motivation. In that case, the court said that there are basically two ways that an applicant can prove that their protected ground is a sufficient motivation. The court uses the language of but for cause, but I prefer to use the language of motivation just to not confuse between causation that may be so attenuated that it isn't a motivation. And I do think the bucket analogies actually do support that reading and that refining of the language. But the first analogy was a circumstance where the hypothetical persecutor had, I think, a hatred of dog owners, but it wasn't enough to motivate them to act. And so as the analogy of motivate to act, Judge Oreck used the analogy of it wouldn't tip the bucket of their motivation. Right. It wouldn't cause he might feel that way internally, but it wouldn't cause any external reaction. But then he might also dislike a particular person because of their religious faith. And even if the hatred of dog owners is quite large and the feeling against Christians might be very small at the bucket, then both of those things combined tip the bucket that would be that would render the protected reason the religious hatred. And I don't mean hatred in like animosity or intent to punish, but just as a feeling of opinion, it would still tip the bucket. It would still be cause. It would still be a motive, even if it was small, so long as it wasn't more than minor as long as it wasn't a drop in the bucket. So that was sort of one way to show that that protective reason was a sufficient motivation. But that wasn't the case at hand in Alfaro Manzano itself. The other way was a way that the Ninth Circuit has understood this motive task to correct for the overdetermined cause problem. But again, in the context of asylum and withholding of removal, it's not really cause something that can be so attenuated in the chain that it doesn't matter to the perpetrator, but more overdetermined motive problem in this specific context. And that's that this same perpetrator has a hatred of dog owners. That's enough to tip the bucket on its own. But then they also had an opinion of somebody for their religious beliefs that also tip the bucket alone. So the fact that the dog ownership motive could have tipped the bucket alone did not preclude the fact that the protected motive was also sufficiently a motivation to merit relief. And so I think what's important about both of those examples is that we're asking whether it tips the bucket. We're asking if that internal belief motivates the perpetrator to act and where the court looks for that evidence of motive is looking at the statements of the perpetrator, but also circumstantial evidence such as the timeline of events, whether harm increased or changed if a perpetrator became aware of a protected characteristic. And again, though, those sort of looking holistically at the facts in this case, it puts this case more on the side of the spectrum, almost identically to Rodrigo Zuniga and unlike cases like Carpeño Romero or Naranjo Garcia or even Alfaro Manzano, the perpetrators there that told the applicant to stop practicing his religion, which the court understood as sufficient animus against his religion. And I think that's also illustrative of what animus means, right, or what intent to overcome means. It doesn't necessarily mean we want this person to not be a Jehovah's Witness anymore at all, but to act in a way that restricts his practice or stops his practice could be an intent to overcome that practice. In the site to Manzano here at AR4, it seems that the BIA was considering the sufficient fill the bucket by itself kind of idea. Where do we see that the agency looked at but for cause? And well, let's start with that. And if they didn't, then why isn't that a problem? Sure, I do think they did. I am having trouble loading my record of fun circumstances being here remotely. But when the immigration judge and the board in affirming noted the fact that the petitioner had other family members, other group members that were not pursued, I think that helps prove and shows that the agency considered that there was a lack of but for motivation with respect to the family. Because the petitioner's maternal grandparents who were also present at the first attack in Teogal, the petitioner's mother testified that while the gang of people did come back to the house, they never harmed or threatened those parents. Those parents are sort of a circumstantial evidence of the desire to use the access to the mother for money was not present, but the family membership was present and they were not harmed. So I think that that is evidence that the agency also considered that sort of right. Absent each motive, they're absent, the money motive there doesn't appear to be harmed with respect to the family membership alone. One of the things that troubles me about the agency's reasoning in this case is you'll want to separate out the withholding standard and the asylum standard. I think most of what you've discussed addresses the asylum analysis. But as I'm sure you are aware, the Ninth Circuit is one of those jurisdictions that has held that the withholding standard is lower, the a reason standard. And in MRMS, the BIA or the AG acknowledges it's only addressing the central reason standard and that there has to be an independent analysis of nexus in jurisdictions like the Ninth Circuit that apply the lower a reason standard for withholding. And when I look at the decision here, the BIA essentially affirms the IG's reasoning and cites Zatino, which is an old case that predates our holding that the causation standards are different. And the idea relies solely on its nexus analysis from the asylum analysis to say essentially for the same reason I'm saying there's no nexus for withholding. How is that not legal error here? So I think that basically that what we're talking about right now is the question of whether something is a motive at all. And so that is a threshold inquiry that comes before whether motives meet either mixed motive standard. They have to be a motive at all before we put them on the scale and consider them under either standard. But the problem is, is that the whole the whole analysis was really in all of the requirement of animus and all those other things is really designed to figure out whether it is a central reason versus merely incidental or tangential. But the agency itself recognizes that a tangential or incidental reason could be a reason for the purposes of withholding. So I don't think you can just say our asylum analysis to determine whether family or was a central reason then determines the nexus analysis for withholding. And that's exactly what we said was error in our precedent. So I'm not, I understand the whole analysis that there needs to be something beyond but for causation for when we're trying to figure out whether the one central reason standard was satisfied. But that as the board itself has said, there has to be a different analysis when we're determining whether there is a reason and acknowledges that an incidental reason can suffice as a reason. This court has never held in a published decision that the a reason standard would be satisfied by just proving causation. That would be a big departure and something that would be unique in this case. I think. I'm not aware of any case that does that again in. Barajas Romero itself, the court does cite the Tino and says, right, if there's no motive at all, we don't get to the question of whether this makes motive analysis occurs. I do understand that there's some tension within the circuits precedent. Roger goes, you need to kind of blend language that looks more like the mixed motive language from one. But that is a no motive case. That wasn't a case that parsed out whether something was one central or a reason. They found that the petitioner's family membership and her gender were not reasons at all for the robbery that she experienced. But I do think that the agency's finding that here and this court approving of that reasoning here would be fully consistent with Rodrigo's. I also want to ask you about how you deal with the Supreme Court president. I think it's Elias Zacharias in your whole discussion of motive, because the Supreme Court seems to have pretty clearly said we're not. Asking really what was the persecutors motive for acting. We're asking why the persecutor selected this particular victim. Because it was the flip here where it was a guerrilla group with political motivations for harming other people. But they said their political motivation for harming others is not the correct inquiry. We have to ask why they picked this particular victim. So here we have essentially the reverse. We have a financial pecuniary motivation, criminal motivation for acting, arguably. But a protected ground for picking a particular victim, or at least that's the claim. Why isn't that the correct analysis under Elias Zacharias? Wouldn't we then say the reason why this victim was picked was because of a protected ground? If I want to go steal from people, but I decide I'm only going to steal from women. Or I'm only going to steal from minority groups. Or I'm only going to steal from members of a particular religious minority. I think we probably would not have any trouble saying, despite the criminal motivation for acting, they're picking victims based on a protected ground. And that would be, presumably, satisfy the nexus requirement. I see I'm almost out of time. I do have two quick answers. As long as we keep having questions, you should keep answering. So don't worry about the time. Great. OK, first, Rodrigo Zuniga does sort of get to this question and says that selection is not sufficient to prove motivation. And I do think that there is support in that in Elias Zacharias itself, because Elias Zacharias, the way I read it, says two important things. The first one that you mentioned, Judge Sung, absolutely. The perpetrator's general political goals are irrelevant. But what's critical, then, is what is relevant is what protected characteristics the applicant possesses and that those protected characteristics motivate them. I think that even in Elias Zacharias, the petitioner even said, oh, I wasn't associated with either the guerrilla group or the government. I was neutral, but it is dangerous to be neutral. That's kind of an opinion in and of itself. But the agency found and the Supreme Court agreed that the petitioner hadn't provided any evidence that the perpetrator knew about that and cared about it. It was indiscriminate in the way that it targeted groups. So, again, I think the question of selection is certainly relevant, but it's not sufficient to prove motivation. I was just going to ask, I mean, is there a difference in the language of on account of as opposed to conduct undertaken because of something when those phrases are used in the statute in various statutes? I hope I have cited it in my brief, but I'm not sure if I did. But there definitely is Ninth Circuit precedent that those two phrases are synonymous. And I think there's also Supreme Court precedent. If I haven't said it at all. Because hasn't I mean, hasn't the Supreme Court, at least in the context of Title VII and other such contexts, been telling us that, you know, if we're thinking about whether there's race discrimination in the context of affirmative action or otherwise, we don't think about motivation. All that because of asks is why was the individual selected and subject to disfavorable treatment? I mean, isn't that is that it has that actually, in some ways, expanded upon the point Judge Sung was making about how one might read the INS versus Elias Zakaria? I mean, that is very much not my area of expertise, but I do think that what's important about the difference between these cases and discrimination cases is the whole statutory phrase, which we talked about in our brief, that the fact that it has to be persecution on account of a protected ground really does sort of emphasize that motivation is critical and that it does have to be a motivation connected to a protected ground. And the Supreme Court has never strayed from that since Elias Zakaria. So following up on the Elias point that you were making, though, about selection, it seems that maybe there there was no reason to think the selection of neutrality was salient. But here the selection is family. And if we are assuming the family is a social group, because we're assuming past that because it wasn't reached, if the family is a social group and the selection is based on family, then why don't we have a satisfied nexus here? Again, I think because the selection is only relevant to the extent that it makes that person a viable access to money. And again, that sort of is where these family claims are quite difficult and I think a little bit unique when it comes to asylum cases. Generally, we all understand that opportunistic crime and extortion, just straight opportunistic crime does not really fall under the umbrella of asylum or withholding of removal. But it becomes more complicated where a family member is used as leverage to access that money. But would it be the case if a criminal gang were engaged in persecution like conduct toward all of the Jewish members of a particular community because they wanted to extort the rabbi who had deep feelings for his congregants and was likely to be influenced by the threats and other conduct targeted at the members of that community? Under this analysis, would it be the case that they would not be being persecuted on account of their Judaism? I think that's right. Yeah. And there is precedent. I know it's in the board and I am sure there are Ninth Circuit cases, but I don't have them in my Rolodex in my head. But there were a bunch of these cases decades ago about ethnic, I think, ethnic Chinese, Indonesian people who were ethnically different from the country that they came from or where they were were natives and citizens. But they were believed by the society at large to be a wealthier class and they were being extorted. They were being physically harmed. But the agency and courts of appeals approving those decisions did have and did hold that just believing or being interested in them, knowing that protected characteristic theoretically, right, knowing their nationality, their ethnicity, but only caring about it to the extent that it was believed to give them access to more money was insufficient to prove nexus. Even under an A reason, you said these are old cases. Would that help us with A reason? They're old cases. I, again, I don't think so, but it would be breaking new ground. And I guess it would. Since the Barajas, the court of appeals here and the board have not really defined what A reason is. They haven't explicitly said that it's less than motivation. But again, I do think that saying that, that it would just be causation like this, or if it's a factor in selection, if that is sufficient. I think there's room to say that it would be something new. Right. But I do think if it could be satisfied by causation alone, that would be contrary to the rest of the life. Sorry, I think you're distinguishing between a factor in selection and motivation in a way that I'm not sure I'm understanding. Am I right that you're thinking those are different? And if so, what is the difference? You know, I don't know. And I thank you for asking that question, because I did mean to talk about it. That might be parsing to find a line that might. And that's sort of how I understand the agency's law. And even Rodrigo Zuniga, it does, I think, does draw that line. By saying that selection is insufficient, but I do think, right, like, selection is in some ways motivation, because it is something that is a factor in why you act or not. Maybe that is, you know, that tips the bucket. I'm only working from the framework of sort of how I read Rodrigo Zuniga and the course precedent in general. But it is a question that might, if the court finds here that it's too fine a line to parse, then mixed motive analysis, at least for withholding of removal, would probably be required on remand. And that's if we. Sorry, we would remand if we think that Rodrigo Zuniga doesn't speak to what exactly? I think you just acknowledged there's a question, but I'm not sure what. Sorry, that even for the purposes of withholding of removal, that selection is not sufficient to prove motivation or the reasons for selecting. Yeah. If at least if that, let me, if you don't mind, I'm going to try to find the exact sentence from Rodrigo Zuniga that I think does say this. No, I'll do it in a funny way. I'm not going to be able to do it. But I mean, am I right that your primary argument is that Rodrigo Zuniga says that selection is not enough for what you're calling motivation? It's not enough for nexus. But you're saying that you're acknowledging, though, that there may be some wiggle room there. I'm acknowledging that it's kind of a hard question that when you're asked to press your thumb on it to say why there's a difference between those two things. Right. Like, I think we're all sort of questioning that right now. And I do even judge some your question at first. Right. Like, if I only want to rob women, that is. I guess there is. But I'm sorry, this is. A little half-baked, but. I think it's still not motivation when it comes to withholding, if it's like it's just easier for me to pick somebody to rob and have a framework in my own mind, if I don't have any opinion about women or think that they are easier targets or have more money. Right. Because they're going to get their nails done and that's why I'm robbing them. Yeah, I don't know. But again, I think my primary argument is that Rodrigo Zuniga does say that that selection is insufficient for both. That was a no nexus case that really wasn't kind of getting to whether something could be a reason or on account of. Considering the issue presented in Rodrigo Zuniga was really about the mother's claim. Right. And I think what we're trying to figure out is, you know, I think the argument in Rodrigo Zuniga was the threat to the son. And does that show that the reason why the mother was being targeted was her family membership? Right. And that all that you're saying makes sense, you know, in terms of that question. Right. That just saying I'm going to harm your son, right, does not show that the reason why they were targeting Rodrigo Zuniga was because of her status as a member of her family group. Right. And especially when they just attacked her, you know, after she left an ATM and happened to be, you know, with her son. I mean, I think in those circumstances, it does make sense to say, like, she could have been with anybody and they would have threatened them. Right. In order to get her to hand over money. Right. And it doesn't show anything about their motive for targeting her, which is she just left an ATM. Right. There's the question here is different. Right. And a lot of what, you know, this court, the agency, others have said about needing something else. Right. To show nexus makes sense in the context of when you're trying to determine a central one. Whether the protected status is one central reason for the alleged persecution. Right. But to my knowledge, we haven't imported any of those requirements into the withholding analysis under the circumstances of this case. Is that correct? Again, after Barajas, there hasn't been any case law about what a reason means, or at least I haven't. I don't know of any in the board or in this court of appeals and published decision. There's been a lot of no nexus cases that sort of our office most generally is defending those no nexus ones. Right. And if the agency properly parses out the two motive analyses. But I'm not aware of any case that really parses out what a reason means. But I, again, would posit like if I were king for a day, that it does still have to be a motivation and not simply causation. And I do think that some case law from this part post Barajas points to that. Right. But I'm trying to understand what what you mean by motivation instead of causation. Because, again, if I go back to the Supreme Court's teachings, right, they just the motive to act isn't really the focus of our analysis. We're asking whether someone was persecuted on account of a protected. Right. And again, I think this is where the intent to overcome our animus language does work. It explains sort of what's the difference between being motivated by a protected ground and not being. Importantly, Rodrigo Zuniga, the applicant made two claims. She made a family claim, but she also made a claim on the basis of her gender. And she said, oh, like, because I'm a woman, I'm just under protected. Generally, police are less likely to intervene. And that's why this woman chose me. But the court and the agency found that she hadn't provided any evidence that the robber in her case was motivated by that fact at all. Again, she was, of course, aware that she was a woman. But she and maybe the robber herself was also a woman. And so maybe she chose it because it was physically easier for her to intimidate her. Who knows? But again, just that awareness is insufficient. And I think saying that awareness or selection would suffice would be saying something really radical and really different and expanding the umbrella of asylum in a way that this court hasn't done before. I'm sorry, expanding and withholding. When you said that there isn't case law that talks about the a reason for withholding. Why isn't Rodrigo Zuniga case law that is talking about that? I mean, there were both claims and it said that it was not a reason either. Right. That's right. So I think they're not talking explicitly about a reason when you get to mixed motive analysis. But all of those published no nexus cases are. Yes. Also saying that this isn't a reason to even get to mixed motive analysis. Yes. In this same kind of posture of targeting the kid to get the money from the parent. Exactly. Yeah. Although isn't I mean, it is the case. Right. That I think as noted, that case involved a single incident. And under the circumstances, it certainly would have been. I mean, I think that, you know, reasonable for the agency to conclude on the basis of the evidence that it happened to be her son at that time. If it had been her nephew, if it had been her dog, if it had been a friend's child, it very well could have been a friend's child for all the robber knew that it was sort of imputed a family relationship to them. So, I mean, aren't those facts relevant in thinking about the scope of what Rodriguez Zuniga was the extent there is any holding or language that might be precedent there that doesn't have to be bound to that particular factual set of circumstances. In that respect, there's a little air between them, but I would say that the second incident actually does sort of. The facts of the second incident cuts against the petitioner in that respect, because, again, the criminals came to the door. They never got inside. But based on the father, the petitioner's father's affidavit, they told the gang that they would get the money and they left. Showing that sort of once that money motivation was satisfied, they were no longer interested in the family. While not in the Ninth Circuit, helpful. I'm so sorry about that. Helpful analogous case is the First Circuit's decision in Aldana Ramos versus Holder. And I think this court said something similar in Naranjo Garcia, which is. I'll focus on Naranjo Garcia because that's precedent. I think it's really helpful to contextualize sort of, again, if that money motive falls out, the fact that the perpetrator is still interested in the family would be strong and even compelling evidence that there was a family motivation at play. In Garcia, the cartel was interested in a deed to the petitioner's land. And even once they gave that deed to the cartel, the cartel continued to pursue the family. They killed the patriarch. They continued to go to they went to his funeral and threatened the family. And again, when we're looking at the facts in this case, it's there. They're nowhere near analogous to that kind of continued pursuit of the family, even absent that money motivation. Again, I agree with that. Everything you're saying with respect to the one central reason analysis. But why would all of that have to be shown for withholding? Because in the Ninth Circuit, it's less. I mean, for one central reason, certainly it has to be an independent. It would have had to be independent on its own enough to cause the harm, the perpetrator persecuted an act against the petitioner. But we've said, you know, a reason is less than that. Right. And so if you know, so and then, you know, so to me, then the question is, why is that? Then, you know, what you know, how can we say that's the same standard that should apply for the withholding claim? I see what you mean, right? Like Durango Garcia, the court could have kind of been saying, like, this is not only is this a reason, it could also be a central reason you have to go back and do all the next mode of analysis. That case was a no nexus case, right? The agency had found that that evidence was insufficient entirely to prove that family matters at all. And I'm really struggling to find a good case to like prove this point or help clarify this point. And so I feel I will send a 28 day about this, but it was my best Rolodex of my own cases. Right. I had a case years ago, after Beralhaz Romero, where an applicant was a taxi driver in Central America, and he stopped driving his taxi. As before that, when he was driving his taxi, a local gang had made him pay a quota every month to continue to run his taxi and otherwise not be bothered. He stopped driving. I think he was ill or something. And then the gang came knocking and asked for the quota, right? And threatened to kill him if he did not pay. They didn't care that he wasn't driving. He, in his application, proposed a particular social group of taxi drivers. Now, despite the existence of matter of a pasta, the agency didn't find anything regarding cognizability of his social group, they assumed it, but they found that it wasn't a motive at all. That the gang was only interested in being paid the quota that they believed they were due. We defended that decision because there wasn't any evidence that this gang had any opinions about taxi drivers at all. And this court affirmed it denied the petition for review. So again, his being a taxi driver was certainly a clear link in the causal chain. It's exactly why he was in the predicament of being both asked to pay a quota and then retaliated against when he stopped paying that quota. But it wasn't a motivation and that was insufficient for asylum and withholding. And is that a published case? It's not. So that, again, it's like not as helpful, but I can't think of a published one that says exactly what I want to say in this time frame, right? But I hope it's helpful. The reasoning was precise in the opinion. I think we have you so much over your time that I need to cut you off unless there's other questions from my colleagues. Okay, thank you very much for your argument. So now we have a puzzle because you guys should get extra time for rebuttal. Let's put five minutes on the clock and see if we're still asking questions, you can keep going, but we're going to give you some extra time. So I want to go back and focus on looking at the motivation. If we're taking that motivation is important in this case, we're looking at the motivation of why our petitioner was targeted in this case. It's not our argument that extortion didn't play a role. We think that while there was extortion, the reasons that Jordan was targeted in this case were specifically because of his family relationship. The fact that other family members weren't injured on the first incident, the second incident, or the third incident shows that the perpetrator specifically cared about the child in this case. The fact that on the third incident, when the perpetrators came back, only the grandfather was there. They didn't cause any harm to him, specifically because they were targeting Jordan in this case. So does that mean, what is the family group definition here? We believe the family group is the child's relationship to his mother. And that was the social group that was proposed, just the child and mother, not a family? Originally, it was family membership, and then the immigration judge decided that it wasn't specific enough, and he was taking it as that the social group was the relationship to the mother. The child relationship to the mother, not just family relationship to the mother. As far as I'm concerned, the immigration judge just said the relationship to the mother. He wasn't expressly saying the child, but we're taking it as the child's relationship to the mother, specifically. So in Rodrigo Zuniga, the child was also a relationship to the mother, but our court seems to have said that both for asylum and for withholding, that relationship wasn't enough for Nexus, even though that is clearly why the kid is being targeted, because they want money from the mother. So how is this different? We think in that case, the reason that that child was targeted was because he was right next to the mother. In our incidents, in the first, second, and third incident, there's many different people around the mother that are related to her. But they're specifically targeting the child because they know about this intimate relationship between the child and the mother. It wasn't a random event where the perpetrators came and saw the mother just with the son. It was on three separate accounts. They were only focusing on Yordan. They weren't worried about the other family members. We think that the reason that they picked Yordan specifically, it doesn't have to be the reason they picked him. But as long as it's a reason that motivated the perpetrators to target him, at least his family membership would be a reason why they chose him. If they showed up for economic reasons, the reasons that they threatened Yordan would still fall into the category of being a reason. And Barajas tells us that the 80-reason standard means at least in part. And it's very hard to argue that his family relationship to his mother was not at least a part of the reason that he was targeted, when that's front and center of why they picked this child in this case. In fact, they first targeted him before he was born, correct? Correct. In the first incident, the mother was nine months pregnant, and she gave birth two days after that first incident. And that also shows that they knew that that was her son. As you mentioned in Rodriguez-Zuniga, it could have been a lucky guess that it was the son next to the mother. But in this case, the perpetrators knew exactly that the child inside of Yordan's mom would be her soon-to-be son. And I think the board, in concluding that no nexus existed, they didn't apply the 80-reason standard, as we were discussing earlier. They solely focused on the economic extortion, and they didn't take into account the possibility of mixed motives, where the mother's relationship with the child definitely played some role in the reason that he was specifically targeted. I'm looking at the IJ's opinion at AR 82, page 8 of the IJ's opinion. I think this is where you're talking about where the social group gets defined. So it says, the court has no doubt with respect to the issue of particular social group that the respondent is considered his mother's son, and thus part of her family, and then talks about how there's no animus against the family. The only animus is against the mother, not against the family. I'm not sure where the group gets redefined as something other than family. Is that the passage you're talking about? Yes, that's the only part where they examine the particular social group. It seems like the IJ there is still talking about the family, because otherwise I don't know why they're talking about the similarly situated family members have not been harmed. Even if we take the family as a whole, they were targeting the child because he is, you could say, the weakest link to the family. So they were picking on him. It's still due to the family membership why they were targeting him specifically. And that relationship to his mother is front and center of why he was targeted in this case. And he's the only petitioner. The mother is not a petitioner in this case. So the motivation for why he's being targeted is strictly because of his relationship to his mother, regardless of why they targeted that family in general. Thank you. Okay, well, thank you both sides for the very helpful arguments. And thank you especially for taking this case pro bono. It's great assistance to our court to have great advocates like you taking on these cases, and we're very grateful to you. Thank you very much. Thank you all. This case is submitted.
judges: FRIEDLAND, SUNG, Pitts